COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner


CHRISTOPHER E. HAWK

                                                    MEMORANDUM OPINION*
v.        Record No. 2964-07-1                             PER CURIAM
                                                      OCTOBER 14, 2008
HELEN J. HAWK


              FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            H. Thomas Padrick, Jr., Judge

                 (Christopher E. Hawk, *pro se*, on briefs).

                 (Joseph W. Hood, Jr.; Joseph W. Hood, Jr. & Associates, on brief),
                 for appellee.


        Christopher E. Hawk (husband) and Helen J. Hawk (wife) were divorced in 2007.  A

commissioner in chancery conducted an *ore tenus* hearing and filed a report with the circuit court.

The circuit court accepted the commissioner's report with a few changes.  On appeal, husband

argues that the commissioner in chancery erred by (1) accepting portions of the testimony of one of

wife's witnesses; (2) accepting portions of wife's testimony; (3) not requiring the appearance of two

subpoenaed witnesses who were not present at the trial; (4) admitting hearsay evidence;

(5) accepting wife's second brief after the conclusion of the evidence; (6) denying husband an

opportunity to explain the dissolution of the marriage, but allowing wife to discuss the dissolution of

the marriage; (7) finding that husband deserted the marriage; and (8) allowing wife to read certain

evidence into the record, but not allowing husband to read certain evidence into the

───────────────

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

record.[1]  Husband further argues that (9) the commissioner in chancery was prejudiced and biased against him, and (10) the commissioner in chancery was not competent.  Husband also questions (11) whether his attorney adequately represented him.  Wife argues that husband's appeal should be dismissed because he did not comply with Rules 5A:18, 5A:20, and 5A:25.  Upon reviewing the record and briefs of the parties, we summarily affirm the decision of the trial court.  See Rule 5A:27.

## BACKGROUND

Husband and wife were married on May 22, 1990, separated on October 8, 2004, and divorced on November 6, 2007.

When the parties married, they lived in wife's home, which she owned prior to the marriage.[2]  The Riverbend property was retitled in both parties' names on January 9, 1991.  Both parties were responsible for the mortgage on the Riverbend property.  The Riverbend property was later rented when the marital residence was built.[3]  In September 1999, wife purchased the land for the Brasileno property with money from her inheritance.  The Brasileno property was titled in the name of "The Helen Hawk Revocable Living Trust."  Wife used approximately $275,000 from her separate funds for the construction of the house, and a $150,000 deed of trust was taken out to complete the house.  Wife testified that she did not intend to gift the Brasileno property to the husband.  The parties used marital funds to pay the mortgage payments.  Husband argued that he made non-monetary and monetary contributions to the Brasileno property.

---

[1] Husband's brief listed thirty-two questions presented, but included text for twenty-five. Several questions were combined with other questions, and some were omitted.  We consolidated the questions presented to the eleven issues presented herein.

[2] The parties refer to the house owned by wife prior to the marriage as the Riverbend property.

[3] The parties refer to the marital residence as the Brasileno property.

In August 2004, wife found pornographic material on the husband's laptop. She confronted husband and gave him several conditions for staying in the home. Wife thought that the parties were working on their marriage, but unbeknownst to wife, husband signed an apartment lease after she confronted him about the pornography. Husband moved out of the marital residence on October 8, 2004. He did not tell wife of his plans to move out. While wife and the parties' son were out-of-town, wife's daughter called wife to tell her that husband had rented a truck and was removing items from the house.

In October 2005, wife filed for divorce. The court appointed a commissioner in chancery to hear the case. The commissioner conducted an evidentiary hearing on August 23, 2006 and September 19, 2006, and a hearing on January 18, 2007 to review exhibits. Both parties submitted briefs to the commissioner.

On March 12, 2007, the commissioner filed his report with the circuit court. The commissioner found that husband deserted the marriage and recommended that wife receive a divorce based on desertion. Husband's requests for spousal support and a reservation of spousal support were denied. The commissioner awarded wife $3,000 in attorney fees plus 35% of the "taxable costs of these proceedings." The commissioner found that the Brasileno property was wife's separate property. He found that husband used his personal efforts and funds toward the Brasileno property, but since husband did not provide any value for those contributions, they were not included in the distribution. The commissioner further found that wife did not gift any interest in the Brasileno property to husband. Although the Brasileno land was purchased and the house was constructed with wife's separate funds, the parties agreed, and the commissioner so found, that there was a marital component to the Brasileno property as a result of principal pay downs on the mortgage from marital funds. The commissioner recommended that wife receive 65% and husband receive 35% of the marital share of the Brasileno property. The commissioner accepted the parties'

stipulation that the Riverbend property was marital and the parties' Brandenburg calculation. The commissioner suggested that husband pay wife her share in the Riverbend property within 30 days of the entry of the final decree, and if husband had not paid wife her share within that timeframe, the house should be listed for sale. The commissioner recommended that the marital share of wife's retirement accounts be divided with 65% to wife and 35% to husband. Furthermore, the commissioner recommended that the marital share of husband's retirement accounts be divided equally.

Husband filed exceptions to the report on March 21, 2007. He objected to (1) awarding wife a divorce based on desertion, (2) awarding husband only 35% of the marital share of the Brasileno property and wife's retirement, (3) awarding wife $3,000 in attorney fees and 35% of the costs, (4) denying attorney fees and costs to husband, (5) denying any compensation to husband for his personal efforts and funds contributed to the Brasileno property, and (6) denying husband spousal support or a reservation of spousal support. The circuit court held a hearing on husband's exceptions in August 2007.[4] The circuit court entered the final decree on November 6, 2007. The circuit court confirmed the commissioner's report, except for the awards of the Brasileno property, wife's retirement, and attorney fees and costs. Husband's shares of the marital portion of the Brasileno property and wife's retirement were increased to 38%. Husband also was ordered to pay 38% of the court costs, but he was not ordered to pay wife's attorney fees. Husband signed the final decree as "Seen and Agreed/Objected To," but did not specify his objections. Husband timely noted his appeal.

---

[4] A transcript of the hearing on husband's exceptions to the commissioner's report was not provided.

ANALYSIS

Rule 5A:18 states that "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention." Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*).

Husband lists thirty-two questions presented in his appeal brief. Questions 1-7 concern objections to one of wife's witnesses, Elizabeth Twofeathers, and whether she committed perjury. Questions 8-15 concern objections to wife's testimony and whether she committed perjury. Question 16 concerns an objection regarding the non-appearance of two subpoenaed witnesses. Question 18 concerns a hearsay objection. Questions 19 and 20 relate to wife's second brief submitted to the commissioner. Questions 22-24 concern the dissolution of the marriage and grounds of divorce. Questions 25 and 26 relate to evidence submitted by wife and husband. Question 27 related to the commissioner, and question 32 relates to husband's counsel. Husband "omitted" questions 17, 21, 28, 29, 30, and 31.

Questions 8-15, 16, 19, 20, 25, 26, 27, and 32 were not preserved at the trial level. The issues were not listed in husband's objections to the commissioner's report, nor were they included as objections to the final decree. There was no miscarriage of justice in this case, and the ends of justice exception does not apply. Therefore, we hold that husband's objections to wife's testimony, the subpoenaed witnesses, wife's second brief, evidence presented by wife and husband, the commissioner, and husband's counsel are procedurally defaulted.

## Witness testimony

In questions 1-7, husband argues that the testimony of wife's witness, Elizabeth Twofeathers, was inconsistent and constituted perjury.

"[A]n appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand." Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 297 (1984).

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 669 (1997) (*en banc*).

Although Twofeathers may have been uncertain about specific dates, the commissioner had the discretion to accept or reject Twofeathers' testimony. He did not err in accepting her testimony.

## Hearsay objection

In question 18, husband argues that the commissioner erred in allowing Twofeathers to state what the parties' son said on the telephone to husband because it was hearsay. The commissioner did not rule on the hearsay objection.

Assuming without deciding that the commissioner erred in allowing Twofeathers to testify about what the son said, the error was harmless. "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any error committed on the trial." Code § 8.01-678.

Even if the commissioner erred in allowing the testimony, the evidence concerned whether the son wanted to visit the father. Custody and visitation were not issues in the circuit court. Therefore, if an error occurred, it was harmless.

<u>Grounds for divorce</u>

In questions 22-24, husband argues about the dissolution of the marriage and contends that the trial court erred in granting wife a divorce based on desertion.

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." <u>Congdon v. Congdon</u>, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003).

Here, wife confronted husband after she found pornographic material on his computer. She set certain conditions for him to remain in the house, and she thought that they were working on their marriage. However, after being confronted by wife, husband leased an apartment in August 2004. On October 8, 2004, he kissed wife good-bye in the morning, just like he normally did. She and their son went to Williamsburg. She did not know that husband had planned to move out of the marital residence that day. After she left the house, husband returned with a truck to move items out of the house. They lived separate and apart ever since he moved out.

"[P]roof by plaintiff of an actual breaking off of matrimonial cohabitation, combined with the intent to desert in the mind of the offender, entitles a deserted party to a divorce." <u>Zinkhan v. Zinkhan</u>, 2 Va. App. 200, 205, 342 S.E.2d 658, 660 (1986). "When such desertion is established, the duty of going forward with evidence of justification and excuse then rests on the defendant." <u>Id.</u>

The commissioner found that husband deserted his wife when he moved out of the marital residence. He leased the apartment several months earlier than his move; he did not

inform wife of his intent to move; he surreptitiously rented a truck and came back to the house to retrieve items when wife and their son were in Williamsburg.

The commissioner also found that husband had no justification for leaving the marital residence. Husband argues that wife told him to leave; however, the courts have held that one spouse telling another spouse to "get out" is not a sufficient ground for divorce. See Rowand v. Rowand, 215 Va. 344, 345-46, 210 S.E.2d 149, 150 (1974).

Husband also argues that the commissioner was biased against him because wife was able to present evidence about the dissolution of the marriage but he was not. We find no merit to this contention. Both parties presented evidence and argued the grounds of divorce. Briefs submitted by both parties discussed the grounds for divorce and the dissolution of the marriage. Husband had ample opportunity to present his case to the court.

The evidence supports the finding of desertion in favor of the wife.

### CONCLUSION

Accordingly, we affirm the trial court's ruling, award attorney fees to appellee for this appeal, and remand to the trial court for a determination of the appropriate fee award.

Affirmed.